Abraham J. G-ellinoff, J.
This is a motion by defendants for summary judgment dismissing the amended complaint. Plaintiffs cross-move for summary judgment in their favor upon the second cause of action.
*1087 The action is brought by a director and two stockholders of the Peoria & Eastern Railway Company (hereinafter referred to as “ Peoria ”) in behalf of Peoria and in behalf of themselves and all other stockholders. The defendants are the New York Central Railroad Company (hereinafter referred to as “ Central ”), the Cleveland, Cincinnati, Chicago & St. Louis Railway Company (hereinafter referred to as “ The Big Four”) and Peoria. Both causes of action are based upon the provisions of an agreement, dated February 22, 1890, between Peoria and The Big Four, which ran for a term of 50 years and was thereafter extended to April 1, 1960 and further extended to April 1, 1970.
The first cause of action alleges that said agreement obligated The ,Bi.g Four and, since 1930, Central, which assumed the agreement and operated the properties of Peoria in the place of The Big Four, ‘ ‘ at its own cost and expense ’ ’ to keep up and maintain said properties and the rolling stock and equipment in good working order. The cause of action alleges that for the years 1960 through 1966 defendants charged the cost of said maintenance to Peoria rather than to themselves, the total amount involved being $7,858,210. Plaintiffs seek judgment in favor of Peoria for that amount.
The second cause of action alleges that the 1890 agreement, and the extensions thereof, provide that The Big Four and Central “ shall and will indemnify and save harmless the Peoria Co. from any and all claims arising out of the operation and management ” of the Peoria properties by said defendants. It goes on to allege that during the years 1960 through 1966 defendants caused such claims to be paid by Peoria instead of by themselves. Judgment is sought in favor of Peoria for the total of such claims, viz. $1,317,061.
Under the agreement involved (the 1890 agreement), Peoria grants to The Big Four and its assigns, subject to specified mortgages, the right to use and operate two lines of railroad, one owned by Peoria and the other leased to Peoria, together with the rolling stock and equipment of Peoria. The Big Four obligates itself to use and operate said lines of trackage in such manner as to satisfy the requirements of law in the States in which the lines are located. In addition, The Big Four agrees to provide and furnish “ at its own cost and expense ” all additional rolling stock and equipment, labor and supplies necessary for that purpose, and also, “ at its own cost and expense ” to keep up and maintain the trackage and all rolling stock and equipment in good working order, and to restore and renew all parts thereof as may be necessary to that end. In addition, *1088 The Big Four agrees to pay all taxes upon the lines of railroad or upon the earnings or income thereof, as well as rentals reserved or other like charges payable for the use of any part or parts of the lines. The Big Four further agrees that it “ shall and will indemnify and save harmless the Peoria Co. from any and all claims arising out of the operation or management thereof ” and that it will also “ at its own cost and expense ” perform and comply with all covenants, terms and conditions undertaken by Peoria in the conveyances, deeds and leases to it of any of the lines of railroad, or in the specified mortgages, excepting only the obligations of Peoria to pay the principal on the bonds secured by the mortgages.
In article second of the 1890 agreement, The Big Four agrees to ensure the payment of interest on all the bonds except that on certain income mortgage bonds, about to be issued and payable only out of net earnings, and further agrees to pay any taxes which Peoria might have to pay or retain from said interest.
In article third of the 1890 agreement, it is provided that The Big Four shall receive all earnings and income and deduct therefrom each year ‘ ‘ the expenses of operation and maintenance during such year, including taxes, assessments, insurance, rental and other like charges, and the cost of repairs, renewals and reasonable betterments ” to the lines of railroad ‘1 necessary for their economical and efficient operation ’ ’. The ‘ ‘ net earnings ’ ’, if any, resulting after such deduction, together with certain independent income from another source, are to be used by The Big Four to pay the interest on the bonds other than the interest on the proposed income mortgage bonds. 1 ‘ After reimbursing itself out of what shall remain of such net earnings and income of the year, not applied as aforesaid to the payment of interest, for any advances hereunder in any previous year remaining unpaid to it ” (with 6% interest), The Big Four is to apply any balance to the payment of interest on the income mortgage bonds, “ and pay over to the Peoria Co. any amount thereof finally remaining.”
Article fifth of the 1890 agreement provides that The Big Four “ shall and will look only to such future net earnings of said lines of railroad operated by it under these presents * * * as shall not be required for the payment of said interest on said .prior bonds and on said First Consolidated Mortgage Bonds * * * for the reimbursement to it of any sums it may advance in compliance with its aforesaid covenants and agreements.”
*1089 No provision whatsoever is made for any compensation to The Big Four for its operation of Peoria’s trackage and rolling stock and equipment. The Big Four is to pay each and every expense required or necessary for its proper operation of the Peoria properties, regardless of whether the income and revenue derived from such operation are sufficient to meet all the expenses. Any deficits incurred in any year are to be borne by The Big Four in the first instance, subject to its reimbursing itself from any balance of net earnings in any subsequent year or years, after payment of interest on the mortgage bonds other than the income mortgage bonds. The most that The Big Four can possibly obtain in return for its operation of the Peoria trackage, rolling stock and equipment is reimbursement (which is not certain) of its expenditures out of future earnings, if prior earnings have proved insufficient to meet them. Any balance of net earnings after such reimbursement and after payment of interest on the income mortgage bonds is to go to Peoria. It is thus clear that in no event can The Big Four become entitled to retain a single penny in excess of its expenditures for the operation of the Peoria properties, although it assumes the risk of large losses if the income and revenue from such operation should prove insufficient to meet all the expenses incurred by it.
In Ewen v. Peoria & Eastern Ry. (34 F. Supp. 332) the claim was made that The Big Four and Central had improperly reimbursed themselves for the expenses incurred by them in maintaining the railroad in good repair and in making additions to its equipment. It was urged that article first of the 1890 agreement requires The Big Four to maintain the railroad and equipment in good working order ‘‘ at its own cost and expense ”. Judge Learned Hand, writing for the three-judge court, overruled this contention, saying (p. 336): “ All we now hold is that the covenant to maintain the road and to make additions to its equipment, did not contemplate gratuitous advances, and that the third article [of the operating agreement] allowed recoupment for so much as was properly expended.”
In view of this determination, plaintiffs do not oppose defendants’ motion insofar as it seeks dismissal of the first cause of action — which proceeds on the theory that defendants had no right to reimburse themselves for expenses incurred in the maintenance of the trackage, structures and equipment. Plaintiffs contend, however, that the case cited did not involve or pass upon the right of reimbursement for expenditures of *1090 defendants in payment of claims by third parties arising out of the operation and management of the Peoria railroad properties. They urge that the covenant of The Big Four to ‘ ‘ indemnify and save harmless the Peoria Co. from any and all claims arising out of the management and operation thereof ’ ’ is inconsistent with any right in The Big Four to recoup from the income and revenues received by it payments made by it on such claims. As defendants aptly point out, however, this reasoning is equally applicable to the covenant of The Big Four to maintain the properties in good working order “ at its own cost and expense ”.
Therefore, standing by itself, without reference to subsequent articles of the agreement, the covenant to maintain “ at its own cost and expense ’ ’ is likewise inconsistent with a right in the covenantor to reimburse itself for maintenance payments out of the revenues and income of the railroad properties. Yet, notwithstanding this absolute covenant to maintain “at its own cost and expense ”, the Federal court in the Ewen case (supra) held that the covenant was not one that binds the covenantor to make gratuitous payments but that it had to be read together with article third which permitted reimbursement. It is clear from reading the 1890 agreement, as a whole, that all the expenditures made in the first instance by The Big Four for the purpose of the proper operation of the Peoria properties were deductible by it from the revenues and income of the operation, to the extent that the revenue and income were large enough to permit the deductions.
The absolute nature of the language of the covenants contained in article first was intended only to make it clear that Peoria was in no event to be liable to make any of the payments or to make reimbursement for payments by The Big Four. But, as article third makes clear, the payments represent proper deductions from the revenue and income of the operation of the railroad in ascertaining what amount, if any, remains to be paid over to Peoria. The payments required in article first, though not advances in the sense that Peoria is obligated to repay them, are advances in the sense that they may be recouped out of the income resulting from the operation of the railroad properties to the extent that the size of the income permits. They are referred to as “ advances ” in the sentence of article third beginning with the words “ after reimbursing itself ” and in article fifth which provides that The Big Four shall be entitled to reimbursement of any sums “ it may advance in compliance with its aforesaid covenants and agreements ”.
*1091 The fact that the language of article third does not specifically enumerate, among the permissible deductions, payments of ‘ ‘ claims arising out of operation or management ” is of no moment. It is clear that the right to deduct expenditures conferred by that article was intended to be co-extensive with the covenants to make expenditures made by The Big Four under article first. Any payments made pursuant to the obligations assumed in article first were to be deductible. Indeed, among the items of deduction enumerated in article third was “ insurance ”. Had The Big Four taken out insurance against claims instead of operating as a self-insurer, in the usual manner observed by railroads, the amounts expended for the cost of such insurance would be clearly deductible from the income of the Peoria railroad properties. No good reason therefore appears why the parties should not have intended to permit deduction of the amounts of claims paid by defendants as self-insurers. To hold that the amounts paid in satisfaction of claims are not properly deductible would mean, to quote from defendants ’ main memorandum, ‘ ‘ that the Operating Company will not only run Peoria at cost and have the risk of having to advance the amount of possible deficits with uncertain likelihood of repayment, but will have to run Peoria at an assured loss to it.”
It is important to point out that the payment of claims is one of the normal and usual expenses of operating a railroad, and that it is just as much an anticipated expense of operation as expenses incurred in the maintenance and upkeep of the tracks and equipment. Many of the claims required to be paid involve no actual or imputed negligence on the part of the operator of the railroad, and many others involve only the negligence imputed by law to a common carrier. It is utterly impossible to operate a railroad without incurring liability for a vast amount of claims, including claims for injuries to employees, claims for injuries to persons, animals and property at grade crossings, and claims for loss or damage to merchandise, which may have occurred without any fault on the part of the carrier. Expenses necessarily and inevitably incurred and anticipated for the payment of a great variety of claims are taken into consideration in the fixation of rates, with the result that the income and revenue received for the benefit of Peoria were and continue to be thereby enhanced. No good reason is shown which warrants the conclusion that the parties to the agreement contemplated that defendants should be denied the right to deduct the amounts paid in settlement or satisfaction of claims — one of the normal and expected operating *1092 expenses. To interpret the agreement as plaintiff suggests would mean that the parties agreed that defendants guaranteed a claims-free operation of the Peoria properties.
In the approximately 76 years of operations under the 1890 agreement and the extensions thereof, the deduction from income and revenues of the amounts paid in satisfaction of claims appears not to have been questioned. Indeed, plaintiff Levine, a director and stockholder of Peoria, and also an attorney, has for years publicly expressed views irreconcilable with the theory of the second cause of action. Although, it is true, his statements are not binding on Peoria, they are some indication that the attempt to deny defendants the right to deduct payments of claims is contrary to the practical interpretation of the agreement generally accepted by all concerned for over seven decades.
The reason for the use of the words “ to indemnify and save harmless ” was, undoubtedly, that The Big Four could not say that it would ‘ ‘ pay ’ ’ all claims arising out of the management and operation, because many of them might be lacking in merit or excessive. All that it could be expected to covenant was that it would see to it that Peoria itself would not have to pay them. What The Big Four said in the agreement was, in effect, “ We guarantee that you (Peoria) will not have to pay them.” That is what the covenant “ to indemnify and save harmless” means. This does not mean, however, that The Big Four could not recoup the payments made by it from the income and revenues of the railroad insofar as they were adequate, provided there was no personal, liability for them on the part of Peoria itself. This is abundantly clear from paragraph fifth which provides that The Big Four “ will look only to such future net earnings * * * for £he reimbursement to it of any sums it may advance in compliance with its aforesaid covenants and agreements ” (italics supplied). No exception is made with respect to The Big Four’s covenant to “ indemnify and save harmless ” from “ claims arising out of the operation or management ”.
In the light of the foregoing, it is unnecessary to consider defendants ’ contentions that the second cause of action is barred as res judicata, or by reason of the Interstate Commerce Commission’s approval of the latest extension agreement.
The motion to dismiss both causes of action is granted, and the cross motion denied.